IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

CARLOS I. CRUZ APONTE, et al.,

Plaintiffs,

v.                                             CIVIL NO. 18-1950 (CVR)

DOCTOR'S CENTER HOSPITAL, et al.,

Defendants.

**OPINION AND ORDER**

**INTRODUCTION**

This case relates to treatment received by Mrs. Amelia Aponte Colón ("Mrs. Aponte") after she was taken to the emergency room ("ER") of Doctors' Center Hospital on December 11, 2018 with complaints of weakness, dizziness, and vomiting, among others. Mrs. Aponte had previously been discharged from the same hospital on November 29, 2017 after undergoing surgery. Plaintiffs posit that she was practically abandoned at the ER and that her treatment during the next 24 hours fell below the standard of care, which led to her death from deep vein thrombophlebitis and a pulmonary embolism one day later, on December 12, 2017.

Plaintiffs are her son, Carlos Cruz Aponte, his wife Ivelisse Cruz and their conjugal partnership ("Plaintiffs"). Co-Defendants are Doctor's Center Hospital, Doctor's Center Bayamón Hospital, and physicians Harry Rodríguez Nazario ("Dr. Rodríguez") and Luis González Ingles.

Before the Court now is co-Defendant Dr. Rodríguez' "Motion for Summary Judgment" seeking dismissal of this case against him. (Docket No. 44). He contends that

Plaintiffs lack evidence to prove that he was negligent in his treatment of Mrs. Aponte. Before the Court are also Plaintiffs' opposition thereto (Docket No. 50) and co-Defendant Rodríguez' reply to Plaintiffs' opposition (Docket No. 53).

For the reasons explained below, co-Defendant Dr. Rodríguez' Motion for Summary Judgment is DENIED.

## STANDARD

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56 (c). Pursuant to the language of the rule, the moving party bears the two-fold burden of showing that there is "no genuine issue as to any material facts," and that he is "entitled to judgment as a matter of law." Vega-Rodríguez v. Puerto Rico Tel. Co., 110 F.3d 174, 178 (1st Cir. 1997).

After the moving party has satisfied this burden, the onus shifts to the resisting party to show that there still exists "a trial worthy issue as to some material fact." Cortés-Irizarry v. Corporación Insular, 111 F.3d 184, 187 (1st Cir. 1997). A fact is deemed "material" if it potentially could affect the outcome of the suit. Id. Moreover, there will only be a "genuine" or "trial worthy" issue as to such a "material fact," "if a reasonable fact-finder, examining the evidence and drawing all reasonable inferences helpful to the party resisting summary judgment, could resolve the dispute in that party's favor." Id. At all times during the consideration of a motion for summary judgment, the Court must examine the entire record "in the light most flattering to the non-movant and indulge all

reasonable inferences in the party's favor." Maldonado-Denis v. Castillo-Rodríguez, 23 F.3d 576, 581 (1st Cir. 1994).

Summary judgment is also appropriate where, as has been alleged here, a Plaintiff does not have sufficient evidence to prove one or more claims. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505, 2512 (1986).

The First Circuit Court of Appeals has "emphasized the importance of local rules similar to Local Rule 56 [of the District of Puerto Rico]." Hernández v. Philip Morris USA, Inc., 486 F.3d 1, 7 (1st Cir. 2007); see also Colón v. Infotech Aerospace Servs., Inc., 869 F.Supp.2d 220, 225-226 (D.P.R. 2012). Rules such as Local Rule 56 "are designed to function as a means of 'focusing a district court's attention on what is -and what is not- genuinely controverted.' " Calvi v. Knox County, 470 F.3d 422, 427 (1st Cir. 2006)).

Local Rule 56 imposes guidelines for both the movant and the party opposing summary judgment. A party moving for summary judgment must submit factual assertions in "a separate, short, and concise statement of material facts, set forth in numbered paragraphs." Loc. Rule 56(b). A party opposing a motion for summary judgment must then "admit, deny, or qualify the facts supporting the motion for summary judgment by reference to each numbered paragraph of the moving party's statement of facts." Loc. Rule 56 (c). If they so wish, they may submit a separate statement of facts which they believe are in controversy. Time and again, the First Circuit has highlighted that facts which are properly supported "shall be deemed admitted unless properly controverted." Loc. Rule 56(e); P.R. Am. Ins. Co. v. Rivera-Vázquez, 603 F.3d 125, 130

(1st Cir. 2010) and Colón, 869 F.Supp.2d at 226. Due to the importance of this function to the summary judgment process, "litigants ignore [those rules] at their peril." Hernández, 486 F.3d at 7.

## UNCONTESTED FACTS[1]

1. On December 11, 2018, Mrs. Aponte was taken to Doctor's Center Hospital where Dr. Rodríguez evaluated her around 11:30 a.m. He documented a history of vomiting and seizure from the day before. There were no positive findings in the physical examination. (Docket 1, No. 18; Docket No. 16 and No. 18).

2. Extremities were described as normal, and Dr. Rodríguez described normal gait. (Id.).

3. Dr. Rodríguez documented an ER Progress Note at 4:17 pm, in which he added some laboratory results: white blood cells 14,020, neutrophils 85.87%, potassium 5.8 and phosphorous 6.7. His disposition included a clinical impression stated as, "seizure, gastritis, hyperphosphatemia" and that the case was being consulted to Internal Medicine. (Docket No. 1. No 19; Docket 16, No 19).

4. Dr. Angel Rodríguez-Quiñones ("Dr. Rodríguez-Quiñones"), Plaintiffs' expert witness, is a physician in internal medicine without boards. He failed to pass them on two (2) occasions and did not take them again. (D. Exhibit 1 p. 34, l. 14-25; p. 35, l. 1- 9).

---

[1] Co-Defendant Dr. Rodríguez filed his summary judgment motion on the basis that Plaintiffs lack evidence to prove their case against him. For this reason, he included few uncontested facts in support of his motion. The Court finds that his petition is more akin to a challenge to Plaintiffs' expert witness under the rules of evidence than a motion for summary judgment, as will be explained more fully below.

Case 3:18-cv-01950-CVR   Document 56   Filed 11/30/21   Page 5 of 14

Carlos I. Cruz Aponte, et al., v. Doctor's Center Hospital, et al.
Opinion and Order
Civil 18-1950 (CVR)
Page 5
_____

5. Dr. Rodríguez-Quiñones is not formally trained in emergency room medicine practice and he does not consider himself a specialist in this area. (D. Exhibit 1, p. 35, l. 11-16; p. 63, l. 4-7).

6. Dr. Rodríguez-Quiñones did not consult any medical literature related to ER management for a patient who comes in with a history of seizure events and vomiting. (D. Exhibit 1, p. 62, l. 16-25).

## LEGAL ANALYSIS

Puerto Rico law governs this diversity case because Plaintiffs are residents of Indiana. Erie R.R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817 (1938).

The Puerto Rico Civil Code states that "[a] person who by an act or omission causes damage to another through fault or negligence shall be obliged to repair the damage so done." P.R. Laws Ann. tit. 31 § 1536 (2020). Under this proviso, three elements comprise a *prima facie* case of medical malpractice. A plaintiff must prove, and/or adduce evidence showing, "(1) the duty owed (i.e., the minimum standard of professional knowledge and skill required in the relevant circumstances); (2) an act or omission transgressing that duty; and (3) a sufficient causal nexus between the breach and the harm." Cortés-Irizarry v. Corporación Insular De Seguros, 111 F.3d 184, 189 (1st Cir. 1997); Rolón-Alvarado v. Municipality of San Juan, 1 F.3d 74, 77 (1st Cir.1993); McGraw v. United States, 254 F.Supp.2d 242, 245 (D.P.R. 2003).

Under Puerto Rico law, there is the rebuttable presumption that the attending physician has observed reasonable degree of care while providing medical treatment. Sáez v. Municipio de Ponce, 84 D.P.R. 515 (1962); Ramos Orengo v. La Capital, 88 PRR 306 (1963); Del Valle Rivera v. U.S., 630 F.Supp. 750 (D.P.R. 1986). For this reason, a

plaintiff must establish, by preponderance of evidence, that the physician's negligent conduct was the factor that most probably caused the damage. Sierra Pérez v. United States, 779 F.Supp. 637 (D.P.R.1991); Pérez Cruz v. Hosp. La Concepción, 115 P.R. Dec. 721 (1984). Because it is such a specialized, technical area, the elements of medical malpractice claims such as standard of care and causation require expert testimony. Alers v. Barceló, 2016 WL 4148237, at *3 (D.P.R. 2016).

Co-Defendant Dr. Rodríguez seeks summary disposition alleging that Plaintiffs lack evidence to prove the claims brought against him. The motion was filed as a motion for summary judgment, yet the argument raised by Defendant therein attacks Dr. Rodríguez-Quiñones' testimony and expert report. Co-Defendant Dr. Rodríguez argues that Plaintiffs' expert witness is not a trained ER doctor and failed to pass the internal medicine boards on two occasions. He also questions the sufficiency of Dr. Rodríguez-Quiñones' expertise, as he allegedly failed to examine relevant literature, and because his expert witness report and deposition allegedly failed to identify the standard of care. Finally, he proffers that Dr. Rodríguez-Quiñones' opinion fails to specifically mention any negligent act by co-Defendant Dr. Rodríguez. Thus, co-Defendant Dr. Rodríguez asks the Court to find that Dr. Rodríguez-Quiñones "is not a competent expert witness"[2], and therefore, to conclude that Plaintiffs cannot prove negligence against him because malpractice claims require expert testimony. In essence, he seeks to disqualify Dr. Rodríguez-Quiñones from testifying as an expert in this case.

---

[2] Docket No. 44, p. 11.

Case 3:18-cv-01950-CVR   Document 56   Filed 11/30/21   Page 7 of 14

Carlos I. Cruz Aponte, et al., v. Doctor's Center Hospital, et al.
Opinion and Order
Civil 18-1950 (CVR)
Page 7
_____

It is evident that co-Defendant Dr. Rodríguez' motion is really a challenge to Plaintiffs' expert witness under Federal Rule of Evidence 702. The Court examines it as such.

Federal Rule of Evidence 702 states that:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case. Fed. R. Evid. 702.

A review of the case law after <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 595, 113 S.Ct. 2786 (1993) shows that the rejection of expert testimony is the exception, rather than the rule. The <u>Daubert</u> case did not work a "sea change over federal evidence law," and "the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system." <u>United States v. 14.38 Acres of Land Situated in Leflore County, Mississippi</u>, 80 F.3d 1074, 1078 (5th Cir. 1996). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." <u>Daubert</u>, 509 U.S. at 595.

Case law post <u>Daubert</u> has further established that "<u>Daubert</u> does not require that a party proffering expert testimony convince the court that the expert's assessment of the situation is correct, but rather, [a]s long as an expert's scientific testimony rests upon

good grounds it should be tested by the adversary process competing expert testimony and active cross-examination-rather than excluded from jurors' scrutiny for fear that they will not grasp its complexities or satisfactorily weigh its inadequacies." United States v. Perocier, 269 F.R.D. 103, 107 (D.P.R. 2009) (*citing* Ruiz-Troche v. Pepsi Cola of Puerto Rico Bottling Co., 161 F.3d 77, 85 (1st Cir. 1998)). For this reason, the district court's analysis must be flexible, not rigid, and must ensure that expert testimony is relevant. Daubert, 509 U.S. at 592. Besides establishing relevancy, the Court must also ensure that the expert opinion is sufficient and reliable. Carrelo v. Advanced Neuromodulation Sys., Inc., 777 F. Supp. 2d 315, 318 (D.P.R. 2011).

As an initial matter, the Court must determine whether the proffered expert witness is "qualified as an expert by knowledge, skill, experience, training, or education" before permitting the testimony to be presented to the jury. Fed.R.Evid 702. This gatekeeping function requires the trial court to determine, given the proffered expert's background, whether the scientific, technical, or other specialized knowledge he offers "will assist the trier better to understand a fact in issue." United States v. Alzanki, 54 F.3d 994, 1005 (1st Cir. 1995) (*quoting* United States v. Sepúlveda, 15 F.3d 1161, 1183 (1st Cir. 1993)).

**A. Credentials.**

Co-Defendant Dr. Rodríguez questions Dr. Rodríguez-Quiñones' credentials and argues that he lacks expertise emergency room medicine (a fact that Dr. Rodríguez-Quiñones admits in his deposition), and that he is not board certified as he failed to pass the boards on two occasions.

Plaintiffs submit in their defense that Dr. Rodríguez-Quiñones' extensive *Curriculum Vitae* lists, among others, his private office practice in internal medicine from 1984 until today, his experience as medical director for several health plans and various hospitals, and his existing privileges and membership in several metro areas hospitals (Pavía Hospital, Hato Rey Community Hospital, San Juan Health Center and Metropolitan Hospital). Thus, it is evident to the Court that that Dr. Rodríguez-Quiñones' has extensive medical education, training, and experience in his field. The Court is convinced he may be able to aid the trier of fact in this case, in compliance with the rule.

The mere fact that Dr. Rodríguez-Quiñones is not an emergency room physician does not mean that he is not qualified to give expert testimony in this case, as Defendant Dr. Rodríguez would have the Court hold. The First Circuit has stated that expertise in a particular field is not essential for an expert to act in that capacity. Mitchell v. United States, 141 F.3d 8, 15 (1st Cir. 1998) ("The fact that the physician is not a specialist in the field in which he is giving his opinion affects not the admissibility of his opinion but the weight the jury may place on it") (*quoting* Payton v. Abbott Labs, 780 F.2d 147, 155 (1st Cir. 1985)). This matter therefore goes to the weight of Dr. Rodríguez-Quiñones' testimony, not its admissibility.

Moreover, the First Circuit has held that it would be an abuse of discretion for the court to exclude medical testimony on the sole basis that it was not related to the testifying physician's medical specialty. See Gaydar v. Sociedad Instituto Gineco-Quirúrgico y Planificación, 345 F.3d 15, 24-25 (1st Cir. 2003) ("The proffered expert physician need not be a specialist in a particular medical discipline to render expert testimony relating to

that discipline")³; see also Holbrook v. Lykes Bros. S.S. Corp., 80 F.3d 777, 782 (3d Cir. 1996) ("[T]he district court erred by finding that Dr. Carpenter was not qualified to render a diagnosis or to discuss the pathology report because he was not a pathologist, oncologist or expert in 'definitive cancer diagnosis.'").

This same reasoning is applicable to Defendant's argument that Dr. Rodríguez-Quiñones failed the boards on two occasions. This matter goes to the weight of his opinion and testimony, not to its admissibility. This is sufficient to meet the first prong of Rule 702.

**B. Sufficiency and Reliability.**

Co-Defendant Dr. Rodríguez next questions the sufficiency and reliability of Dr. Rodríguez-Quiñones' testimony. He contends that in his deposition, the expert stated that his opinion was based only on his knowledge and experience and not on a standard of care, and further, that he failed to examine and cite to any literature in support of said opinion. He also argues that the opinion failed to mention any specific negligent act by Dr. Rodríguez.

This district had the opportunity to examine this precise issue in the case of Brady v. Hosp. Hima-San Pablo Bayamón, No. 07-1085 (ADC), 2010 WL 597421 (D.P.R. Feb. 16, 2010). In Brady, as here, the Defendant argued that Plaintiffs' expert report was not supported by any medical journal, that it was inconclusive, and that it did not establish any breach of a standard of care. Defendant also complained that the expert's deposition testimony and report did not determine specific facts and the basis of his opinion. The

---

³ In Gaydar, the First Circuit found that the District Court abused its discretion when it disqualified a medical practitioner that was not a gynecologist or obstetrician in a malpractice action involving a pregnancy.

Court found that "defendant's contention that plaintiffs' expert witness opinion does not establish a breach of standard of care because it is unsupported by medical journals is in itself unavailing since the minimum standard of acceptable care is almost always a matter of informed opinion, which depends on the expert witness' medical knowledge and training". Id. at *4. The Court in Brady held that these issues went to the weight and credibility of the expert, and not the admissibility of the information. Id.

In Casillas Sánchez v. Ryder Mem'l Hosp., 14 F.Supp.3d 22, 26 (D.P.R. 2014), this district further found that the fact that an expert did not mention or produce "any single piece of specific medical literature in order to establish the alleged standard of care" was not significant because the Federal Rules of Evidence 705 and 703 did not require an expert to do so. The court held instead that Rules 705 and 703 "place[ ] the burden of exploring the facts and assumptions underlying the testimony of an expert witness on opposing counsel's cross-examination" *quoting* United States v. Perocier, 269 F.R.D. at 109, and 4-705 *Weinstein's Federal Evidence* § 705.05; see also Carrelo, 777 F. Supp. 2d at 318-19 (a challenge to the factual underpinnings of an expert opinion is a matter that affects the weight and credibility of the testimony and is a jury question); United States v. Vargas, 471 F.3d 255, 264 (1st Cir. 2006) and Int'l Adhesive Coating Co. v. Bolton Emerson Int'l, Inc., 851 F.2d 540, 545 (1st Cir. 1988).

In the present case, although Dr. Rodríguez-Quiñones stated in his deposition that his expert opinion was based on his experience, a review of the expert report at issue indicates he cited to four (4) external resources in support thereof. This is sufficient to end the discussion of this point.

Case 3:18-cv-01950-CVR  Document 56  Filed 11/30/21  Page 12 of 14

Carlos I. Cruz Aponte, et al., v. Doctor's Center Hospital, et al.
Opinion and Order
Civil 18-1950 (CVR)
Page 12
_____

Experience, however, is certainly a reliable principle in which to base an expert report on. See Cruz-Vázquez v. Mennonite Gen. Hosp., Inc., 613 F.3d 54, 59 (1st Cir. 2010) (holding that "specialized knowledge," namely his medical training and experience in the field of obstetrics and gynecology and whether it would "assist the trier better to understand a fact in issue," were the appropriate field of inquiry for the district court when it performed its gatekeeping function). Consequently, the Court finds that Dr. Rodríguez-Quiñones' experience and background meet the requirements of Fed R. of Evidence 702.

As to the standard of care, the report in question clearly mentioned numerous deviations therefrom that were attributed to Defendants, to wit: failure to record vital signs, failure to perform a chest plate, failure to check the position of the endotracheal tube and condition of the lungs (Dr. Rodríguez-Quiñones' report specifically indicated as to the latter that "for most practitioners, this is a standard medical procedure"), pneumonology or critical care specialists were not consulted to assist in the management of the patient, failure to transfer the patient to the ICU for specialized nursing care, among others. (Docket No. 45, Exhibit 2). Dr. Rodríguez-Quiñones concludes his report by stating that "the actions and omissions were directly related to the unfortunate purpose of the case". (Id.)

Therefore, the Court finds that Dr. Rodríguez-Quiñones' opinion, which is based on his analysis, training, and experience, does include a minimum standard of care required in medical malpractice cases such as the instant one, and further finds that his report specifically lists sources used in the preparation of the report. At this juncture, this is sufficient to meet the remaining prongs of Federal Rule of Evidence 702. Whether the

Case 3:18-cv-01950-CVR   Document 56   Filed 11/30/21   Page 13 of 14

Carlos I. Cruz Aponte, et al., v. Doctor's Center Hospital, et al.
Opinion and Order
Civil 18-1950 (CVR)
Page 13
_____

materials cited and used are relevant and sufficient to convince a jury of the allegations raised in the Complaint is a matter for Defendants to explore in their cross-examination of Dr. Rodríguez-Quiñones at trial.

Finally, regarding the argument that the report fails to specifically point to any deviance by co-Defendant Dr. Rodríguez, while it is true that the report is short and somewhat general, some of the medical care provided in the "case summary" section of the report specifically mentioned treatment provided to Mrs. Aponte by co-Defendant Dr. Rodríguez.  The report goes on to describe, as stated above, several omissions in treatment and concludes by stating that "the medical care provided to Mrs. Aponte upon returning to Doctor's Center Hospital Bayamón on 12.11.17 was inadequate" and "suboptimal", and  "the actions and omissions, as described above, were directly related to the unfortunate outcome of the case".  (Docket No. 45, Exhibit 2).

At this stage of the case, where all inferences are to be made in favor of the non-moving party, the Court cannot categorically say that the care provided by this particular Defendant, or lack thereof, had no effect on the outcome of this case.   Whether or not that treatment ultimately fell below medical standards, as alleged, is precisely the kind of issue that falls squarely within the jury's province, and which must be for them to decide as the ultimate fact finders. Zampierollo-Rheinfeldt v. Ingersoll-Rand de Puerto Rico, Inc., 999 F.3d 37, 53 (1st Cir. 2021) (noting that, in deciding a motion for summary judgment, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge") (*quoting* Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505 (1986)). Co-Defendant

Dr. Rodríguez will have ample opportunity to cross-examine Dr. Rodríguez-Quiñones during the trial and explore these issues in as much detail as he sees fit.

In sum, the Court finds that Dr. Rodríguez-Quiñones' expert witness report meets the threshold for expert testimony in the present case under Fed. R. Evid. 702. Defendant Dr. Rodríguez' motion was premised on casting doubt and excluding Dr. Rodríguez-Quiñones testimony and report, which the Court finds meets the requirements of the rule. Consequently, the motion is DENIED. It will be up to the jury to decide whether or not co-Defendant Dr. Rodríguez' actions in this case met the applicable standard of care.

## CONCLUSION

For the above-mentioned reasons, Co-Defendant Rodríguez' Motion for Summary Judgment (Docket No. 44) is DENIED.

The Pre-Trial/Settlement Conference will be set via separate Order.

IT IS SO ORDERED.

In San Juan, Puerto Rico, on this 30th day of November of 2021.

S/CAMILLE L. VELEZ-RIVE
CAMILLE L. VELEZ RIVE
UNITED STATES MAGISTRATE JUDGE